During the deposition, he testified that: (1) he had at no time ever been confined to a wheel chair fully incapable of ambulating; (2) he had used a wheel chair for short periods of time because of some swelling of his feet, but that during such periods, he was at all times capable of ambulating without the wheelchair; (3) he only remembered authorizing between five and ten suits to be filed on his behalf; (4) he was not sure whether he was a member of Access; (5) he had never met Mr. Fuller, his lawyer, before the deposition; (6) he could not recall which Speedway station(s) he had had an access problem with; (7) he could not recall if the problem(s) still existed or not; (8) he has never had a handicapped parking permit; (9) he had never seen nor reviewed the Complaint; and (10) he was unaware that he had been alleged to be a quadriplegic.[2]

Almost two months after "discovering" that his client was not a quadriplegic, Mr. Fuller filed a motion to take a voluntary dismissal of the matter,[3] but Speedway objected to any dismissal absent an award of attorney's fees, and subsequently filed a motion for attorney's fees and costs pursuant to 28 U.S.C. §1927. The Court dismissed the case and granted Speedway's motion for fees and instructed the parties to attempt to come to some type of resolution over the fee matters. They were unable to do so, and so the Parties returned to the Court for resolution of the matter of fees.

In evaluating the Motion for Attorney's Fees, the Court became apprised of and extremely concerned with what appeared to be, at best, extremely sloppy legal work, and at

---

[2] In fact, McNeilly did not know what a quadriplegic was, and when the term was explained to him, he was repulsed by the thought of being so incapacitated and surprised that he had been thought to be so.

[3] He also filed an emergency motion to extend the safe harbor period under Rule 11 discussed *infra* (DE 28).

2

worst, deliberately fraudulent filings. Accordingly, the Court ordered Fuller to provide specific

information regarding the relationship between himself, Access, other advocacy organizations he

represents, and McNeilly.[4]  Fuller was also ordered to provide copies of McNeilly's medical

records, copies of all authorizations for suit signed by Mr. McNeilly, and:

> any invoices, receipts, checks, disbursements and/or other financial records
> relating to Fuller & Fuller's representation of and relationship to both the
> corporate and individual plaintiff, including the amounts received as attorney's
> fees for any cases settled before trial, and how such funds were distributed.
> Specifically, please provide any information regarding payments to Access
> America or John McNeilly

Mr. Fuller produced most of the requested documents, and a hearing was held on March

10, 2003 to determine to what extent the Court should enter sanctions against Mr. Fuller.[5]  We

have carefully scrutinized the documents produced by Fuller, as well as the entire record in this

and some forty-nine other suits wherein McNeilly was a named individual plaintiff, and make

the following observations:

    1.      The following six suits were filed in the Southern District of Florida indicating
           that Mr. McNeilly suffered from quadriplegia:[6]

> 01-civ-14286 _Access & McNeilly v. Greyhound Real_
> (filed September, 2001- closed January, 2002)
>
> 01-civ-14287 _Access & McNeilly v. Killavaney Property_
> (filed September, 2001 - closed March, 2002)
>
> 01-civ-14288 _Access & McNeilly v. St. Lucie Palm_

---

[4]  Mr. Fuller represents a potpourris of advocacy groups.  Out of those groups, McNeilly
has appeared as the named individual Plaintiff in cases involving Access and one entitled Access
4 All.

[5]  There Court found no basis for contemplating sanctions against  McNeilly.

[6]  This list does not include the instant action.

(filed September, 2001 - closed July, 2002)

01-civ-14321 Access & McNeilly v. Village Shops
(filed October, 2001 - closed June, 2002)

01-civ-14322 Access & McNeilly v. Lauderdale-Regency
(filed October, 2001 - closed January, 2002)

01-civ-14323 Access & McNeilly v. H.B. Associates;
(filed October, 2001 - closed January, 2002)

2.  Through independent research, the Court discovered an additional six cases filed by Mr. Fuller in the Middle District of Florida wherein it was asserted that McNeilly was a quadriplegic:

6:01-1260-civ Access & McNeilly v. Republic Bank
(filed October, 2001 - closed April 26, 2002)

6:01-1287-civ Access & McNeilly v. Desantis[7]
(filed November, 2001 - closed May, 2002)

6:01-1321-civ Access & McNeilly v. Slabine
(filed November, 2001 - closed May 2002)

6:01-1322-civ Access & McNeilly v. Stratford Ent.
(filed November, 2001 - closed September 2002)

6:01-1323-civ Access & McNeilly v. Harbor City Ctr.
(Filed November,, 2001 - closed August, 2002)

6:01-1324-civ Access & McNeilly v. Palm B.C.V., Ltd.
(Filed November, 2001 - closed June. 2002)[8]

---

[7]  The record in this case reflects that Plaintiff amended the Complaint on March 15, 2002, indicating that it he knew as early as March that McNeilly did not suffer from quadriplegia as previously asserted.  Also telling, is the fact that the Amended Complaint asserted that (1) " John McNeilly suffers from a mobility impairment due to a back operation and diabetes" and (2) "Mr. McNeilly uses a wheelchair to ambulate."  Such assertion of use of a wheelchair is simply not supported by the medical records, nor by McNeilly's testimony. (2d Amend. Compl. ¶ 7).

[8]  Fees were granted by the court in this matter in November, 2002.

4

3.  Fuller settled several of the above cases, and obtained attorney's fees in them before McNeilly's deposition occurred. In those cases that were not settled before the deposition date, none of the records reflect any amendment to correct the false quadriplegia assertion. These records also do not contain any indication that the relevant defendants were informed as to the true nature of McNeilly's ambulatory capabilities.

4   Fuller continued to prosecute subsequent cases involving McNeilly, wherein McNeilly was alleged to suffer from a severe mobility impairment and was unable to ambulate without the use of a wheelchair;[9]

5.  McNeilly's medical records do not support a representation that he suffers from quadriplegia;

6.  McNeilly's medical records do not support an assertion that he suffers from a severe mobility impairment requiring the use of a wheelchair for ambulation;

7.  McNeilly's medical records do not support a finding that he is a "person qualified as disabled" under the ADA;

8.  Fuller has filed over forty claims on behalf of Mr. McNeilly. He submitted thirty-five authorizations to sue allegedly signed by Mr. McNeilly. McNeilly only remembers signing a few.[10]

9.  Mr. Fuller provided closing/distribution forms for less than half the claims his firm filed with Mr. McNeilly as the named individual plaintiff;

10. Mr. Fuller provided closing/distribution information for only six out of the thirteen "quadriplegic" suits set forth in items 1 & 2;

11. The records of the thirteen "quadriplegic" suits bear no indication whatsoever that Mr. Fuller made a full disclosure as to the true nature of Mr. McNeilly's lack of disability;

_____

[9] *See e.g.* Case No. 01-CIV-14070, Access for All & John McNeilly vs. JSL Equity (wherin McNeilly was alleged to be unable to ambulate without use of a wheelchair - settled in July, 2002); 02-CIV-80068, Access for All & John McNeilly vs. Neptune Warehouse (settled June, 2002; 02-14076, Access for All & John McNeilly vs. Floyd Investments (settled in December, 2002). These are just illustrations, and not necessarily a complete list. Fuller received several thousands of dollars in fees in each of these matters.

[10] The Court notes that many of these authorizations are undated, or appear to be possible replications of a prior authorization's signature placed with a new defendant entity.

12.  Mr. Fuller continued to prosecute the above claims, and appears to have accepted attorney's fees for most of them;[11]

13.  Mr. Fuller has represented plaintiffs in over six hundred disability access suits since 1999;[12]

14.  A majority of those six hundred cases involved advocacy groups requesting injunctive and declaratory relief and seeking attorney's fees;

15.  Based upon the 95 closing statements Fuller submitted for the Court's in camera inspection, the Court has calculated that a fair approximate of the average fee amount Fuller earned/negotiated per case was approximately $5,100.00 after subtracting expert fees and costs related to filing;[13] and

16.  Multiplication of the average after-cost amount per claim by 600 results in a conservative figure of over three million dollars in attorney's fees since the end of 1998.

Mr. Fuller's initial response to the Court's determination that sanctions were warranted

was the response that Access could have at all times proceeded in the instant action without Mr.

McNeilly because Access consists of a membership base of disabled persons.[14] Accordingly,

---

[11] This appears to be the case. Fuller did not provide closing statements for all of the quadriplegic cases. The Court notes that the closing statements submitted reflects no fees were documented in 01-14232 indicating that all cases have a closing statement, even when no fees are collected. Accordingly, the Court makes no inference that cases without closing statements resulted in no fees.

[12] Some of the advocacy groups are: (1) Advocates for the Disabled; (2) Access Now, Inc.; (3) Disability Advocacy and Access Network, Inc.; (4) Access for the Disabled, Inc.; (5) Disabled Patriots, Inc.; (5) Access for America, Inc.; and (6) Access 4 All.

[13] The Court notes that the disbursement summary included copies of the checks coming into the firm, but did not include substantiation or expense for the expert fees or costs via either invoice or copies of checks. The average of the actual amount recovered absent these costs was approximately $7,500.00 per case. The Court further notes that most of the complaints reviewed were virtually identical and the dockets uncomplicated

[14] Access provided the Court with its membership roster indicating that it was composed of some forty-five members with a multitude of disabilities from a "bad heart" to "quadriplegia." Mr. McNeilly was listed as "2 discs removed from back, diabetes, feet swell."

said Fuller, that meant that Access was capable of sustaining an action against the Defendant

under the doctrine of associational, or representational standing, and that therefore, his mistaken

allegation as to McNeilly's quadriplegia did not result in any prejudice to the Defendant. The

Court dismissed such assertion as having no legal basis in the context of this sanctions matter.[15]

By the time of the sanctions hearing, Mr. Fuller conceded that imposition of sanctions was

appropriate. Specifically, the hearing opened as follows when the Court asked Plaintiffs what

they felt was appropriate:

>   The Court:          Okay Mr. Josefsberg, what should we do with this case.
>
>   Mr. Josefsberg:     I think you should impose sanctions, and I'm not here to convince
>
>                       you otherwise.

However, he asserted at the hearing, and in more recent pleadings, that the awarding of

Defendant's requested attorney's fees would be a windfall for those attorneys and not an

appropriate sanction.

 The Court now must assess what sanctions are appropriate to deter future repetitions of

this type of behavior by Fuller or others.   28 U.S.C. §1927 provides that:

>   Any attorney . . . admitted to conduct cases in any court of the
>   United States . . . who so multiplies the proceedings in any case

---

[15] Despite Plaintiff's assertions, this Court has never held that an advocacy association
has per se standing to pursue the claims of its representatives. Rather, the Court has determined
that, at the motion to dismiss stage, having to take the facts alleged in the complaint to be true, as
it must, when an advocacy association asserts that one of its members has been denied access and
is likely to be denied future access due to a disability, the Court need not dismiss an advocacy
association for lack of naming the individual member. This situation involves a rather different
posture than that seen at the motion to dismiss stage of pleading, and at no point did Fuller allege
that any other individual had been denied access at Defendant's facilities.

> unreasonably and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and attorneys' fees
> reasonably incurred be cause of such conduct.

The key to unlocking the Court's powers to invoke sanctions under this section is a

finding of bad faith. *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)( relying on *Barnes*

*v. Dalton,* 158 F.3d 1212, 1214 (11th Cir. 1998)); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.

1995)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L. Ed.2d 27 (1991)).

However, sanctions can be awarded under this section in cases lacking credibility from

the outset, such as when an attorney fails to adequately investigate the factual basis for the

allegations contained in the Complaint. *See Sullivan v. School Bd. Of Pinellas Cty.*, 773 F.2d

1182 (11th Cir. 1985). Attorneys are responsible for investigating the claims of a lawsuit prior to

filing. *Beard v. Annis*, 730 F.2d 741 (11th Cir. 1984). This obligation continues throughout

every stage of the proceedings. *See Avirgran v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

"When it becomes apparent that discoverable evidence will not bear out the claim, the litigant

and his attorney have a duty to discontinue their quest." *Id.* In other words, when it becomes

apparent that a claim is baseless, it is an attorney's duty to seek voluntary dismissal.

In this case, Fuller did ultimately seek voluntary dismissal. However, he did not do so for

almost two months after he realized that McNeilly was not a "quadriplegic." Further, this

application is not entirely on point because had Fuller ever bothered to meet with his client or

review his medical history, it would have been readily apparent at the outset that the Complaint

lacked a good-faith basis. Additionally, Fuller continued to actively prosecute claims in which

McNeilly was alleged to be either quadriplegic or so severely impaired in his mobility that he

8

required use of a wheel chair for ambulation.

Further, Fuller appears to have taken the same lack of care in other cases. For example, this same " evolution to quadriplegia" seems to have occurred in other Fuller cases involving a plaintiff namedDoug Wilder, another member of Access. In his earlier suits, Fuller represented that Wilder was a "person qualified as an individual with disability" under the ADA in May of 2001. By December of that same year, he was "suffering from Quadriplegia."[16] *See Access for America & Douglas Wilder v. Orange Pine Ltd. Partnership,* Case NO. 6:01-281-Civ (M.D. Fla. 2001); *Access for America & Douglas Wilder v. Lembo,* Case No. 6:01-2354 (M.D. Fla. 2001).

The difference between a 'person qualified as disabled' and a "quadriplegic" is not a minor one as the greater, or more profound, the disability, the greater the extent of injunctive relief that can be requested and granted.[17] For example, the vast majority of courts considering the scope of injunctive relief available under Title III have held that an representational plaintiff is limited to the relief applicable to the named plaintiff in a denial of access case. In other words, if the named individual plaintiff was a blind person, then the advocacy group of which that blind plaintiff is a member may not ordinarily obtain injunctive relief for barriers unrelated to blindness, absent proof of actual or imminent injury due to another disability.

---

[16]   The Court makes no assertion that the "worsening plaintiff" occurrences described herein are intentional, it does note that, at the very least, they are worrisome. Mr. Wilder is listed on Access's membership list as having multiple sclerosis. While multiple sclerosis may result in severe mobility impairment, the Court is of the belief that it is medically different than "quadriplegia."

[17]   *Cf. Access 4 All, Inc. V. Floyd Investments, Ltd.,* Case No. 02-14076 - Civ - Paine (holding that organizational plaintiff is not limited to asserting claims limited to only the individually named plaintiff, but rather may assert claims represented by all of its members). This holding is not binding upon the Court, and the undersigned does not find the specific language of Title III's injunctive enforcement provision to support it.

Similarly, a wheelchair bound person would be unable obtain relief for barriers related to blindness. Allowing an advocacy group standing to complain about and require remedy of all violations on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III. *See Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

In this particular case, however, McNeilly was alleged to suffer from quadriplegia, a disability which has many potential access issues, and the fact of the matter is that this is not a case where an attorney conducted a reasonable inquiry into the facts underlying the plaintiff's claim and then much to his surprise discovers that his claim does not have validity. Rather, this is a case where an attorney proceeded with no investigation as to the merits of the claim whatsoever.

The Court notes that some of the "quadriplegic" suits listed above were dismissed, some with orders reading "each party bearing its own costs and fees." However, there is no indication that they were dismissed due to Fuller's disclosure of McNeilly's status, and such cases were the exception. The records indicate that for the most part, Fuller continued to prosecute all of the McNeilly "quadriplegic" cases. He also continued to prosecute several cases in which McNeilly was alleged to a person with severe mobility impairment requiring use of a wheel chair for ambulation.[18] Further, the filings indicate that Fuller in fact has on more than one occasion obtained fees in cases in which the dismissal order read "each party to bear its own costs and

---

[18] While the Court is not sanctioning Fuller for conduct not properly before it, it utilizes these other cases to determine whether Fullers actions were reasonable or taken in bad faith. It also utilizes them to determine Fuller's ability to pay the proposed sanctions as required by Eleventh Circuit precedent.

fees. "[19]  Accordingly, the fact that a dismissal order declared that each party was to bear its own

costs and fees does not mean that Fuller did not obtain fees in a dismissed case.

     In summary, the Court finds that this complete lack of investigation, coupled with the

numerous complaints filed without such investigation, together with the lack of any remedial

action in other suits leads to no other conclusion than these cases were brought with either

intentional or reckless disregard of Fuller's duty to the Court and to the Bar in general.

Accordingly, the Court finds that this establishes bad faith sufficient to warrant imposition of

sanctions pursuant to Section 1927.

     Alternatively, sanctions are also appropriate under Rule 11, which  provides that "[i]f,

after notice and a reasonable opportunity to respond, the court determines that [this rule] has

been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or

parties . . . responsible for the violation."   Rule 11 also provides that "[b]y presenting [a

pleading, motion or other paper] to the court . . . an attorney . . . is certifying that to the best of

[his or her] knowledge, information, and belief, *formed after an inquiry reasonable under the*

*circumstances* . . ." that the pleading:

    (1) it is not being presented for any improper purpose, such as to harass or to
    cause unnecessary delay or needless increase in the cost of litigation;

    (2) the claims, defenses, and other legal contentions therein are warranted by
    existing law or by a nonfrivolous argument for the extension, modification, or
    reversal of existing law or the establishment of new law;

    (3) *the allegations and other factual contentions have evidentiary support* or, if
    specifically so identified, are likely to have evidentiary support after a reasonable

_____

    [19] *See e.g.* Access 4 All & John McNeilly vs. Stenick Partners Case No. 6:02-227 (M.D.
Fla.)(dismissing case with "each party to bear its own costs and fees" while fees in excess of
$6,000.00 were obtained by Plaintiffs).

opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence, if specifically so identified are reasonably based on a lack of information or belief.
. . .

FED. R. CIV. P. 11. (emphasis added).

Rule 11 also provides that any sanction imposed under the rule must provide notice to the attorney of its intent to impose sanctions, the specific behavior for which it feels sanctions are warranted, and an opportunity to be heard on the issue of why sanctions are not appropriate. It is undisputed that Mr. Fuller has been fully informed of the conduct complained of, the Court's intention to impose sanctions, as well as a full opportunity to both (a) be heard on all issues, and (b) come to some agreement with Defendant as to the nature of such sanctions. As the Parties were unable to come to such agreement, the Court must determine what sanctions are appropriate as the Rule requires that any sanction imposed must be "limited to what is sufficient to deter repetition such conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(2).

The Court again notes that while the question of whether Access could have maintained this suit without McNeilly is not the issue before it, consideration of the merits of such assertion is necessary in the context of determining the egregiousness of Fuller's conduct under Rule 11. It is undisputed that McNeilly has not now, nor did he at the time the Complaint was filed have standing to bring suit on his own behalf.[20] However, Fuller has asserted that because Access could have maintained this suit without McNeilly, there has been no multiplication of

---

[20] In his deposition, McNeilly conceded that he was not "denied access" at any of Defendant's places of accommodation. He was assisted and reasonably able to obtain access to all services.

proceedings due to the mistaken allegation to McNeilly's disability. The Court simply disagrees with this assertion.

Under Rule 11 the Court evaluates whether the Complaint had any merit at the time that it was filed. The Court evaluates the attorney's conduct as of the time of filing the offensive pleading with an objective standard in order to determine whether a reasonable attorney would have filed such a pleading with the information available at the time of its filing . *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

Traditionally, in disability cases such as the one presented here, an advocacy group, along with a named disabled plaintiff, files suit against a public establishment pursuant to Title III of the Americans with Disabilities Act ("ADA").[21] To state a prima facie case of disability discrimination under this Title, an individual plaintiff must show that (1) he or she is disabled; (2) the structure or edifice in question is a place of public accommodation as contemplated by the ADA; and (3) that he or she was denied full and equal treatment because of his or her disability, and (4) that he or she will likely be denied full and equal access in the future due to the same disability. *See Ass'n. For Disabled Americans, Inc. v. Concorde Gaming Corp. and Goldcoast Entertainment Cruises*, 158 F.Supp.2d 1353, 1359-61 (S.D. Fla. 2001).

The Eleventh Circuit has not yet addressed organizational standing as it relates to Title III of the ADA. It has however, addressed the concept of organizational standing, and accordingly, the law is well established that an organizational plaintiff such as Access may bring suit on

---

[21] Title III provides, in pertinent part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accomodation by an person who owns . . . or operates a place of public accommodation. 42 U.S.C. §12182(a).

behalf of its members without a showing of actual injury to the association itself under the concept of organizational or representational standing set forth in *Warth v. Seldon*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999).

"The concept of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III [of the Constitution]." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  The Supreme Court has held that to have standing under Article III, a plaintiff must establish that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not merely conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to being merely speculative, that the injury will be redressed by a favorable decision." *Id.*; *Access Now, Inc. & Edward Resnick v. South Florida Stadium Corp., et al.*, 161 F. Supp 2d 1357, 474 (S.D. Fla. 2001).

Organizational plaintiffs purporting to represent the interests of its members must, in addition to the above, establish that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organizations purpose; and  (c) neither the claim asserted nor the relief requested requires participation by individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. at 511; *Doe v. Stincer*, 175 F.3d at 882.

Fuller has implied that *Doe* has made it unnecessary for a disability advocacy organization to provide a named plaintiff because of the following statement: "we have never

14

held that a party suing as a representative must specifically name the individual on whose behalf

the suit is brought . . . it is enough for the representative entity to allege that one of its members .

. . has suffered an injury that would allow it to bring suit in its own right." *Doe*, 175 F.3d at 884-

884.

In *Doe*, a law student was hospitalized for several days for observation after what

appeared to be a suicide attempt. Concerned with what her medical records would disclose about

her mental health, the student attempted to obtain her medical records of the hospitalization so as

to make proper disclosure to the Florida Bar. The Hospital and its physicians refused to provide

the student with copies of her medical records due to a Florida Statute that limited access to

mental health records. An advocacy group filed suit on her behalf and on behalf of other

unnamed mentally ill patients denied access to their medical records. The defendants challenged

the advocacy group's standing as applied to the unnamed patients. The Eleventh Circuit found

that the group did not need to name an individual patient to have standing.[22] In *Doe*, however,

the Eleventh Circuit considered an advocacy group's standing in the presence of a specific

congressional grant of organizational standing.

The Statute involved in *Doe* was PAMII, a federal statute that established an advocacy

system for individuals with mental illnesses to "protect and advocate the rights of such

individuals . . . ." *Doe*, 175 F.3d at 883.[23] Under PAMII, an advocacy group was empowered

with " the authority to . . . pursue . . . legal . . . remedies to ensure the protection of individuals

---

[22] The Court did however find that the group had not presented any allegation of an injury in fact or real threat of future injury as required by Article III.

[23] *Doe* also analyzed PAIR, another congressional grant of advocacy authority and determined it to be analogous to PAMII resulting in an identical conclusion.

with mental illness . . . ." *Id.* Confusion within the district appears to exist as to the applicability

of *Doe v. Stincer* to these access cases, and the organizational standing requirements applicable

to disability advocacy groups. Specifically, some judges in the District have read *Doe* to permit

standing to any advocacy group alleging a violation under Title III for any denial of access which

might affect one of its members irregardless of whether the organization has named an individual

plaintiff.[24] Additionally, one court has read *Doe* so liberally as to provide that the scope of

injunctive relief available to an advocacy under Title III is only limited by the disabilities of all of

the groups members, as opposed to the disability of the injured individual plaintiff.[25]

Unlike PAMII, however, Title III of the ADA has a specific limitation on standing to "any

person who is being subjected to discrimination on the basis of a disability . . . or who has

reasonable grounds for believing such person is about to be subjected to discrimination in

violation of . . . [the ADA]." 42 U.S.C. §12188(a)(1)(2001). I am persuaded by those courts

which have found that Title III language provides a specific limitation which results in requiring

an advocacy organization to establish an Article III injury in fact under *Hunt.* This may be done

by "requiring an organization suing as representative to include at least one member with

standing to present, in his or her own right, [a valid] claim." *Hunt,* 432 U.S. at 555-56; *Doe,* 175

F.3d at 882; *Access Now, Inc. v. South Florida Stadium Corporation,* 161 F. Supp.2d 1357, 1364

---

[24] *See* Case No. 01-7209 - CIV-DIMITREOULEAS , *Access for the Disabled, Inc. v. Splitting Ates, Inc.* (S.D. Fla.); Case No. 96-1272-CIV-HIGHSMITH, *Association for Disabled Americans, Inc. v. Amnesia International, Inc.*(S.D. Fla.). These cases, and others relied upon by Fuller, however, dealt with standing at a preliminary motion to dismiss stage where the facts alleged in the complaint were taken to be true.

[25] *See* Case No. 02-14076 - CIV-PAINE (S.D. Fla.)(holding that advocacy group may bring claims for injunctive relief for access barriers applicable to all its members).

(S.D. Fla. 2001); *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158

F.Supp.2d 1353, 1363-64 (S.D. Fla. 2001); *Concerned Parents to Save Dreher Park Center v.*

*City of West Palm Beach*, 884 F.Supp. 487 (S.D. Fla. 1994); *Alliance for ADA Compliance, Inc.*,

*et al. v. Weston Town Center, LLC*, Case NO. 01-7906-CIV-UNGARO- BENAGES(S.D. Fla.

2002).

    This perspective is supported by the Eleventh Circuit's opinion in *Shotz v. Cates*, 256

F.3d 1077 (11th Cir. 2001). In *Shotz*, the Court held that in order to state a valid claim under

Title II of the ADA, an individual plaintiff must establish, at an irreducible minimum, an injury

in fact caused by the challenged act of the defendant. *Id*. at 1081. Further, as the *Shotz* plaintiffs

were seeking injunctive relief, they also had to establish a "real and immediate- as opposed to a

merely conjectural or hypothetical- threat of *future* injury." *Id*. (emphasis in original).

    In conclusion, and as discussed above in consideration of sanctions pursuant to §1927, at

the very minimum, to be reasonable, an attorney must conduct a reasonable pre-filing inquiry as

to the veracity of the facts alleged in the complaint. *See Threaf Properties, Ltd. v. Title Ins. Co.*

*Of Minnesota*, 875 F.2d 831, 835 (11th Cir. 1989). "If an attorney has failed to conduct a

reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the

attorney had a good faith belief that the claim was sound." *Worldwide Primates, Inc. V.*

*McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996); *In re Mroz* 65 F.3d 1567, 1573 (11th Cir. 1995).

    In determining the proper sanction, the Court has considered the testimony given at the

hearing and all filings submitted thus far. Defendants requested, and the Court granted, that it

receive its reasonable fees incurred in defense of this action. The Court has reviewed the time

records submitted by Defendant's counsel and finds that they are reasonable and that there is no

17

excessive billing or billing for matters otherwise attributable to another case. Accordingly, it is

ORDERED and ADJUDGED that Fuller pay to Defendant the requested $43,323.90 in

Attorneys Fees and Costs consisting in $35,749.22 in attorney and paralegal fees, $6,196.68 in

costs and expenses and $1,378.00 in travel and subsistence expenses for Corporate Counsel and

Corporate Representative travel necessary to this case. The Court specifically finds that such

sanction is not an undue financial burden given the amount of fees Fuller has received in the

quadriplegic cases alone. The amount, however, is high enough to hopefully deter repetition of

this type of activity by Fuller and all other attorneys representing disability advocacy groups.

It is further ORDERED and ADJUDGED an additional sanction of a one-year mandatory

supervision of a special master be imposed as suggested by Fuller and his counsel. David

Lichter, Esq. is hereby appointed special master. Such special master shall review all Complaints

filed by Fuller and his firm, and be provided whatever support is necessary, to ensure that proper

pre-suit investigation has been conducted. The special master shall also determine whether

additional disclosures should be made to opposing counsel with respect to any of the settled cases

involving McNeilly or with respect to any other cases. Fuller & Fuller, P.A. shall pay all costs

associated with the duties of the special master.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this ___ day of

April, 2003.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Lawrence A. Fuller, Esq.
              Robert C. Josefsburg, Esq.
              Susan Potter Norton, Esq.

Copies to:    Lawrence A. Fuller, Esq.
              Robert C. Josefsburg, Esq.
              Susan Potter Norton, Esq.

860 N.E.2d 759

🖾 West Reporter Image (PDF)

112 Ohio St.3d 1214, 860 N.E.2d 759, 2007 -Ohio- 259

Supreme Court of Ohio.
DISCIPLINARY COUNSEL
v.
FULLER.
No. 2006-2218.
Submitted Jan. 11, 2007.
Decided Jan. 18, 2007.

ON CERTIFIED ORDER of the Supreme Court of Florida, No. SC05-2324.
  *1215 {¶ 1} On November 30, 2006, relator, Disciplinary Counsel, filed with this court a certified copy of an order of the Supreme Court of Florida entered August 31, 2006, in *Florida Bar v. Lawrence Arthur Fuller,* in case No. SC05-2324, in which respondent was admonished. On December 8, 2006, this court ordered respondent to show cause why identical or comparable discipline should not be imposed in this state. Respondent filed no response to the show cause order. This cause was considered by the court and on consideration thereof,

  {¶ 2} It is ordered and adjudged by this court that pursuant to Gov.Bar R. V(11)(F)(4), respondent, Lawrence Arthur Fuller, Attorney Registration No. 0075793, last known business address in North Miami, Florida, be publicly reprimanded.

  {¶ 3} It is further ordered, sua sponte, by the court that within 90 days of the **760 date of this order, respondent shall reimburse any amounts that have been awarded against the respondent by the Clients' Security Fund pursuant to Gov.Bar R. VIII(7)(F). It is further ordered, sua sponte, by the court that if, after the date of this order, the Clients' Security Fund awards any amount against the respondent pursuant to Gov.Bar R. VIII(7)(F), the respondent shall reimburse that amount to the Clients' Security Fund within 90 days of the notice of such award.

  {¶ 4} It is further ordered, sua sponte, that all documents filed with this court in this case shall meet the filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio, including requirements as to form, number, and timeliness of filings.

  {¶ 5} It is further ordered, sua sponte, that service shall be deemed made on respondent by sending this order, and all other orders in this case, by certified mail to the most recent address respondent has given to the Attorney Registration Section.

  {¶ 6} It is further ordered that the Clerk of this court issue certified copies of this order as provided for in Gov.Bar R. V(8)(D)(1), that publication be made as provided for in Gov.Bar R. V(8)(D)(2), and that respondent bear the costs of publication.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

Ohio 2007.
Disciplinary Counsel v. Fuller
112 Ohio St.3d 1214, 860 N.E.2d 759, 2007 -Ohio- 259

END OF DOCUMENT

🖾 West Reporter Image (PDF)

930 A.2d 194
In re Lawrence A. FULLER, Respondent.
No. 06-BG-1303.
District of Columbia Court of Appeals.
Decided August 9, 2007.

Before KRAMER and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:

In this disciplinary proceeding against respondent Lawrence A. Fuller, a member of the Bar of this court, the Board on Professional Responsibility ("Board") has recommended that reciprocal and identical discipline be imposed in the form of an order of admonishment. No exceptions to the Board's Report and Recommendation have been filed.

On August 31, 2006, the Supreme Court of Florida entered an unpublished order of admonishment wherein it approved an uncontested referee's report and entered judgment for the recovery of costs in the amount of $3,125.12. *In re Fuller*, No. SC05-2324 (Fla. Aug. 31, 2006). The referee's report approved the conditional guilty plea and consent judgment, wherein respondent consented to the admonishment and admitted to violations of the Florida Bar Rules, including violations of the Florida Rules of Professional Conduct against the frivolous bringing or defending of a proceeding and conduct prejudicial to the administration of justice. On September 20, 2006, respondent self-reported the Florida discipline to the District of Columbia Bar. On November 1, 2006, Bar Counsel filed a certified copy of the order from the Supreme Court of Florida. On November 27, 2006, this court issued an order directing: 1) Bar Counsel to inform the Board of his position regarding reciprocal discipline within thirty days, 2) respondent to show cause why identical, greater, or lesser discipline should not be imposed, and 3) the Board either to recommend reciprocal discipline or proceed *de novo.* Thereafter, Bar Counsel filed a statement recommending reciprocal discipline of a reprimand by the Board.

In its report and recommendation, the Board notes that in cases like this, where neither Bar Counsel nor the respondent opposes identical discipline, "'the most the Board should consider itself obliged to do . . . is to review the foreign proceeding sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline — a situation that we anticipate would rarely, if ever, present itself.'" *In re Childress,* 811 A.2d 805, 807 (D.C.2002) (quoting *In re Spann,* 711 A.2d 1262, 1265 (D.C.1998)); *In re Reis,* 888 A.2d 1158 (D.C.2005). Here, the Board reports there was no miscarriage of justice in the Florida matter because respondent participated in the Florida proceeding, and through counsel, entered into the conditional guilty plea and consent judgment. Moreover, the Board found, and we agree, that there is no basis for any exception set forth in D.C. Bar R. XI, § 11(c) to apply here.

A rebuttable presumption exists that "the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Goldsborough*, 654 A.2d 1285, 1287 (D.C.1995) (citing *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992)). The Board notes that the reciprocal and identical discipline of an order of admonishment is outside the choice of sanctions provided by D.C. Bar R. XI, § 3. Nevertheless, it recommends identical discipline since there is no equivalent discipline in this jurisdiction to an order of admonishment, and in certain reciprocal matters, it is appropriate to "apply the foreign discipline *in haec verba.*" *In re Zdravkovich*, 831 A.2d 964, 970 (D.C. 2003); *In re Coury*, 526 A.2d 25, 25-26 (D.C.1987). This court has previously held that a public censure is the functional equivalent of a public reprimand issued by the Supreme Court of Florida, *In re Zukoff*, 925 A.2d 549, 2007 D.C.App. Lexis 252 (D.C.2007), *In re Steele*, 914 A.2d 679 (D.C.2007); however, this court has not yet addressed what is this court's functional equivalent of an order of admonishment issued by the Supreme Court of Florida. The Board requests that, unlike the Florida discipline, the order of admonishment should be published to promote the general openness of disciplinary proceedings, *see* D.C. Bar R. XI, § 17(a), and this court concurs that this is the appropriate discipline.

Since no exceptions have been taken to the Board's report and recommendation, the Court gives heightened deference to its recommendation. *See* D.C. Bar R. XI, § 11(f)(1); *In re Delaney*, 697 A.2d 1212, 1214 (D.C.1997). As we find support in the record for the Board's findings, we accept them, and adopt the sanction the Board recommended. Accordingly, it is

ORDERED that Lawrence A. Fuller is hereby admonished.

*So ordered.*

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY
D.C. App. No. 06-BG-1303 Bar Docket No. 349-06
*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This reciprocal discipline matter comes before the Board on Professional Responsibility (the "Board") as a result of an order of admonishment imposed upon Lawrence A. Fuller ("Respondent") by the Supreme Court of Florida (the "Florida Court"). Although it is outside the choice of sanctions provided for in D.C. Bar R. XI, § 3, we recommend that the District of Columbia Court of Appeals (the "Court") impose the identical reciprocal discipline of an order of admonishment upon Respondent.

I. BACKGROUND

Respondent was admitted to the District of Columbia Bar by motion on June 3, 2002. Respondent also is a member of the Florida Bar.

Respondent self-reported his Florida discipline to the District of Columbia Bar by letter dated September 20, 2006. The Bar forwarded the letter to Bar Counsel, and on November 1, 2006, Bar Counsel filed a certified copy of the Florida Court's order of admonishment with the Court. On November 27, 2006, the Court issued an order suspending Respondent on an interim basis pursuant to D.C. Bar R. XI, § 11(d) and directed the Board either to: (i) recommend whether identical, greater or lesser discipline should be imposed as reciprocal discipline; or (ii) determine whether the Board should proceed *de novo*. Order, *In re Fuller*, No. 06-BG-1303 (D.C. Nov. 27, 2006).

On December 21, 2006, Bar Counsel filed a statement recommending that the Board reprimand Respondent as functionally identical reciprocal discipline to the Florida Court's order of admonishment. Respondent has not responded to Bar Counsel's statement or otherwise participated in this proceeding.

## II. *THE FLORIDA PROCEEDINGS*

Respondent executed a Conditional Guilty Plea and Consent Judgment in which he admitted that he violated Florida Bar Rules ("Florida Rule(s)") 3-4.2[1] (violation of Florida Rules of Professional Conduct), 4-3.1[2] (the frivolous bringing or defending of a proceeding), and 4-8.4(d)[3] (conduct prejudicial to the administration of justice). Conditional Guilty Plea and Consent Judgment, *The Fla. Bar v. Fuller*, No. SC05-2324, slip op. at 2 (Fla. July 12, 2006).

Specifically, Respondent admitted that he failed to perform an adequate pre-suit investigation before filing 13 complaints under the Americans with Disabilities Act that erroneously alleged his client was a quadriplegic. *Id.* at 3. The allegation was mistakenly inserted by a secretary using a template. In one of the cases, Respondent discovered the mistake when he met the client at a deposition; three days later, he faxed a letter with a proposed stipulation to opposing counsel, offering to take a voluntary dismissal. *Id.* Respondent delayed almost two months thereafter, however, before filing the motion for voluntary dismissal, because of opposing counsel's outstanding claim for fees and costs. *Id.* In a sanctions order, Respondent was ordered to pay attorney's fees and costs in the amount of $43,323.90, and a Special Master was assigned to supervise Respondent and his practice for one year, at Respondent's expense. *Id.* at 2-3. Respondent also sent letters to opposing counsel in the other cases notifying them that the client was not suffering from quadriplegia. *Id.* at 4.

Respondent consented to an admonishment by the Florida Court in the Conditional Guilty Plea and Consent Judgment and to payment of the Florida Bar's costs. Consent Judgment, *Fuller*, slip op. at 4. On July 12, 2006, the Report of the Referee approving the Conditional Guilty Plea and Consent Judgment was filed with the Florida Court. On August 31, 2006, the Florida Court entered an unpublished order of admonishment in which it approved the uncontested referee's report and entered judgment for recovery of costs in the amount of $3,125.12. *See* Order, *In re Fuller*, No. SC05-2324 (Fla. Aug. 31, 2006).

III. *RECIPROCAL DISCIPLINE*

There is a presumption in favor of imposing identical reciprocal discipline that may be rebutted by clear and convincing evidence that one or more of the five exceptions set out in D.C. Bar R. XI, § 11(c) exists.[4] D.C. Bar R. XI, § 11(f); *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). When a respondent does not contest reciprocal discipline, however, the Board's role is limited to reviewing the foreign proceeding "'sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline. . . .'" *In re Childress*, 811 A.2d 805, 807 (D.C.2002) (quoting *In re Spann*, 711 A.2d 1262, 1265 (D.C.1998)). The imposition of identical discipline when the respondent fails to object "should be close to automatic, with minimum review by both the Board and this court." *In re Cole*, 809 A.2d 1226, 1227 n. 3 (D.C.2002) (per curiam).

In accordance with our limited role, we have examined the record and find nothing that rises to the level of an obvious miscarriage of justice. Respondent participated in the Florida disciplinary proceedings and, through counsel, entered into the Conditional Guilty Plea and Consent Judgment. There is thus no due process violation. The misconduct to which Respondent stipulated also is misconduct here and violates the counterpart provisions of the District of Columbia Rules of Professional Conduct.[5] The imposition of reciprocal discipline is therefore appropriate.

There remains an issue as to exactly what discipline should be imposed. There are two forms of non-suspensory sanctions available to the Florida Court: a public reprimand, and for cases of minor misconduct, an order of admonishment. Fla. Bar R. 3-5.1(a) & 3-5.1(d). The District of Columbia has only one form of non-suspensory sanction by the Court — a public censure. *See* D.C. Bar R. XI, § 3(a)(3). The Court has held that a public censure is the functional equivalent of a public reprimand by the Florida Court. *See, e.g., In re Zukoff*, 925 A.2d 549, 549 (D.C.2007) (per curiam); *In re Steele*, 914 A.2d 679, 682 (D.C.2007). The form of discipline that is equivalent to an order of admonishment imposed by the Florida Court remains an open question.

Bar Counsel submits that the functionally equivalent discipline to an order of admonishment by the Florida Court is a reprimand by the Board. We do not agree with Bar Counsel. The status and authority of the entity issuing a disciplinary sanction is the key factor in the determination of functional identity. *See* Order, *In re Shevlin*, Bar Docket No. 404-05 at 6 (BPR July 27, 2006) (citing Order, *In re Mizrahi*, Bar Docket No. 247-04 at 14 (BPR Mar. 8, 2005) ("comparative status and authority of the two tribunals" most appropriate determinant of functional identity)). In our view, an order of admonishment issued by the Florida Court, which is comparable in status and authority to our Court, is not the functional equivalent of a reprimand issued by this Board.[6]

Because there is no exact equivalent discipline in this jurisdiction to the order of admonishment issued by the Florida Court, we must look beyond the choice of sanctions provided for in D.C. Bar R. XI, § 3 in order to determine the appropriate reciprocal discipline. The Court has stated that in certain reciprocal matters it is

appropriate to "apply the foreign discipline *in haec verba*." *In re Zdravkovich*, 831 A.2d 964, 970 (D.C.2003); *In re Coury*, 526 A.2d 25, 25-26 (D.C.1987) (per curiam) (in reciprocal discipline cases, the Court is to impose an identical sanction, regardless of whether it exists in the District of Columbia). We find that this is such a case and conclude that the appropriate reciprocal discipline is an identical order of admonishment issued by the Court.

We do, however, recommend one modification of the Florida discipline. The Florida order of admonishment specified that it was not to be published. In this jurisdiction, there is no such limitation on public disclosure of a disciplinary sanction under D.C. Bar R. XI, which instead reflects a judgment in favor of general openness of disciplinary proceedings and of public disclosure of the sanction imposed. *See* D.C. Bar R. XI, § 17(a); *In re Soto*, 840 A.2d 1291, 1291-92 (D.C.2004) (per curiam) (citing *In re Dunietz*, 687 A.2d 206, 211 (D.C. 1996)). We thus recommend that the order of admonishment be fully public and that it be published in the normal course. We also do not recommend an identical requirement that Respondent be ordered to pay costs, since this jurisdiction does not require the payment of costs by respondents. *In re Holdmann*, 834 A.2d 887, 888 (D.C.2003).

## IV. CONCLUSION

For the foregoing reasons, the Board recommends that the Court issue an order of admonishment against Respondent as identical reciprocal discipline.

### BOARD ON PROFESSIONAL RESPONSIBILITY

By: */s/ Ernestine Coghill-Howard*
Dated: 6/18/07

All members of the Board concur in this Report and Recommendation.

-----------------

Notes:

1. Florida Rule 3-4.2 (Rules of Professional Conduct) states:

Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.

2. Florida Rule 4-3.1 (Meritorious Claims and Contentions) states:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend that proceeding as to require that every element of the case be established.

3. Florida Rule 4-8.4(d) (Misconduct) states:

A lawyer shall not:

(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic[.]

4. The five exceptions under D.C. Bar R. XI, § 11(c) are as follows:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or (3) The imposition of the same discipline by the Court would result in grave injustice; or (4) The misconduct established warrants substantially different discipline in the District of Columbia; or (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

5. Florida Rule 3-4.2 does not have a District of Columbia counterpart, but this does not bar the imposition of reciprocal discipline where the remaining misconduct would violate the District of Columbia rules. *See, e.g.*, *In re Daum*, 918 A.2d 1196, 1198 n. 3 (D.C. 2007) (per curiam) (citing *In re Youmans*, 588 A.2d 718, 719 (D.C.1991) (per curiam)).

6. Our review of the Florida disciplinary scheme instead suggests that the closest equivalent in Florida to a reprimand by this Board is an order of admonishment issued by the Florida Grievance Committee. *See* Florida Rule 3-5.1(a).

--------------

Exhibit "5"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ACCESS 4 ALL, INC., a Florida Not-For-Profit          Case No.: 1:07-cv-2923
Corporation, and NELSON M. STERN,                     (LBS) (FM)
Individually,

                                    Plaintiffs,        **VERIFIED ANSWER**

                                                       Judge Leonard B. Sand
            -against-                                  Magistrate Judge Frank Maas

ULSTER HEIGHTS PROPERTIES, INC.,
a New York Corporation,

                                    Defendant.
---------------------------------------------------------------X

Defendant, Ulster Heights Properties, Inc. ("Ulster Heights"), by its attorneys, Rogers,

McCarron & Habas, P.C., as and for its answer to the complaint in this action by defendants,

Access 4 All, Inc. ("Access 4 All") and Nelson M. Stern ("Stern"), responds and alleges as

follows:

    1.      Denies knowledge and information sufficient to form a belief as to the truth of the

allegations set forth in paragraph "1" of the complaint.

    2.      Denies knowledge and information sufficient to form a belief as to the truth of the

allegations set forth in paragraph "2" of the complaint.

    3.      Denies the allegations contained in paragraph "3" of the complaint, except that it

admits that Ulster Heights owns Prel Plaza.

    4.      Denies the allegations contained in paragraph "4" of the complaint.

    5.      Denies the allegations contained in paragraph "5" of the complaint.

    6.      Denies the allegations contained in paragraph "6" of the complaint.

    7.      Denies the allegations contained in paragraph "7" of the complaint.

    8.      Denies the allegations contained in paragraph "8" of the complaint.

9.     Denies the allegations contained in paragraph "9" of the complaint.

10.    Denies the allegations contained in paragraph "10" of the complaint.

11.    Denies the allegations contained in paragraph "11" of the complaint.

12.    Denies the allegations contained in paragraph "12" of the complaint.

13.    Denies the allegations contained in paragraph "13" of the complaint.

14.    Denies the allegations contained in paragraph "14" of the complaint.

15.    Denies the allegations contained in paragraph "15" of the complaint.

16.    Denies the allegations contained in paragraph "16" of the complaint.

17.    Denies the allegations contained in paragraph "17" of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

18.    The individual plaintiff, Nelson M. Stern, lacks standing to commence or maintain this action.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

19.    The associational plaintiff, Access 4 All, lacks standing to commence or maintain this action.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

20.    Both the individual plaintiff, Nelson M. Stern, and the associational plaintiff, Access 4 All lack standing to commence or maintain this action insofar as plaintiffs seek injunctive relief.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

21.    The Court lacks subject matter jurisdiction over this action.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

22.    Plaintiffs fail to state a cause of action upon which relief can be granted.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

23.     Some or all of the alleged violations are not readily achievable, not required or would create an undue hardship on defendant. The original structure and area of the premises, which preempts the January 26, 1992 effective date of the ADA has never been modified or altered since its construction in 1968.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

24.     Some or all of the alleged violations are the responsibility of third parties.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

25.     Defendant has fully complied with all local requirements concerning handicapped parking and ramps.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

26.     The premises were designed in accordance with New York State and National BOCA building codes in effect at the time the building was constructed. The premises have always been in compliance with applicable building codes and regulations since its construction.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

27.     Plaintiff, Access 4 All lacks the authority to bring this action.

WHEREFORE, defendant, Ulster Heights Properties, Inc., demands judgment as follows:

(i)     Dismissing the complaint in its entirety; and

(ii)    The costs and disbursements of this action, including reasonable attorneys' fees and such other and further relief as to this Court may seem just and proper.

Dated: Orangeburg, New York
        August 1, 2008

Patricia E. Habas, Esq. (PEM 8353)
ROGERS, McCARRON & HABAS, P.C.
Attorneys for Defendant
Ulster Heights Properties, Inc.
Prel Plaza, Suite 7
60 Dutch Hill Road
Orangeburg, NY 10962
(845) 359-5400

VERIFICATION

STATE OF NEW YORK        )
                         )ss:
COUNTY OF ROCKLAND  )

Israel Turnheim, being duly sworn, deposes and says: that I am the Building Manager of the Defendant, Ulster Heights Properties, Inc. herein, that deponent has read the foregoing endorsed complaint and knows the contents thereof, and the same is true to deponents own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is the authorized agent and building manager of Ulster Heights Properties, Inc. which is a corporation and deponent is familiar with the facts and circumstances herein.

The sources of deponent's information and grounds of deponent's belief as to all matters not stated upon deponent's knowledge are: The books and records of Ulster Heights Properties, Inc.

_____
Israel Turnheim

Sworn to before me this
31ˢᵗ day of July, 2008

_____
Notary Public

FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

03 OCT -7 AM 9 26

**COLLEEN MACORT and ACCESS NOW, INC.,**

CLK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

Plaintiffs,

v.                                                Case No. 8:03-cv-1328-T-30EAJ

**CHECKER DRIVE-IN RESTAURANTS, INC., a foreign corporation, d/b/a Checkers Drive In Restaurant,**

Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Stay Proceedings Pending Remediation (Dkt. # 11) and Plaintiffs' Response to Defendant's Motion to Stay Proceedings Pending Remediation and Supporting Memorandum of Law (Dkt. # 12). The Court, having considered the motion and memoranda, and being otherwise fully advised, finds that the motion should be GRANTED.

It is therefore ORDERED AND ADJUDGED that:

1.    This case is hereby STAYED for a period of ninety (90) days in order to afford the Defendant an opportunity to remediate the property, thereby conserving client and judicial resources.

2.    Defendant shall keep the Plaintiffs advised of the remediation process.

SCANNED



3.      The parties shall file a joint Status Report at the end of the ninety (90) day stay

advising the Court of whether, given the Defendant's remediation efforts, the

case has been amicably resolved or whether the stay should be lifted for further

proceedings.

4.      Consideration of all pending motions is DEFERRED until after the ninety (90)

day stay.

**DONE and ORDERED** in Tampa, Florida on this ___/___ day of October, 2003.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2003\03-cv-1328.90daystay.wpd

F I L E   C O P Y

Date Printed: 10/07/2003


Notice sent to:

    ____    Gregory E. Schwartz, Esq.
            Schwartz Zweben & Associates, LLP
            4651 Sheridan St., Suite 355
            Hollywood, FL  33021

            8:03-cv-01328    jlh

    ____    Bartosz A. Ostrzenski, Esq.
            Schwartz Zweben & Associates, LLP
            4651 Sheridan St., Suite 355
            Hollywood, FL  33021

            8:03-cv-01328    jlh

    ____    Brian T. McElfatrick, Esq.
            Bush, Ross, Gardner, Warren & Rudy, P.A.
            P.O. Box 3913
            Tampa, FL  33601-3913

            8:03-cv-01328    jlh

    ____    Edward O. Savitz, Esq.
            Bush, Ross, Gardner, Warren & Rudy, P.A.
            P.O. Box 3913
            Tampa, FL  33601-3913

            8:03-cv-01328    jlh

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ACCESS FOR THE DISABLED, INC.,
and JOHNNY LONG,
                    Plaintiffs,

v.                                                    CASE NO: 8:02-cv-2337-T-26MSS

NOW INVESTMENTS, INC.,
                    Defendants.
_____/

ORDER

UPON DUE CONSIDERATION, it is ORDERED AND ADJUDGED as follows:

1) The Defendant's Motion to Toll Proceedings Pending Remediation (D kt. 5)
is granted.

2) The Defendant's Request for Oral Argument and a Hearing (D kt. 10) is
denied as moot.

3) This case is hereby stayed for a period of 90 days in order to afford the Defendant an
opportunity to remediate the property thereby conserving client and judicial resources.

4) The Defendant shall keep the Plaintiffs advised of the remediation process.

5) The parties shall file a joint status report at the end of the 90-day stay advising the
Court of whether, given the Defendant's remediation efforts, the case has been amicably resolved
or whether the stay should be lifted for further proceedings.

6) The Clerk is directed to administratively close this case during the period of the stay.

DONE AND ORDERED at Tampa, Florida, on January 23, 2003.

                                        /s/ Richard A. Lazzara
                                        United States District Judge

COPIES FURNISHED TO:

Counsel of Record

EXHIBIT
A

FILED

03 APR 14 PM 6: 32

. . . . . . . . . . . .
. . . . . . . OF FLORIDA
TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ACCESS FOR THE DISABLED,
INC., and JOHNNY LONG,

    Plaintiffs,

v.                                   Case No. 8:03-cv-350-T-23MAP

CLEARWATER PROFESSIONAL
CENTER, LLC,

    Defendant.
_____/

## ORDER

Upon consideration, the defendant's "Motion to Toll Proceedings Pending Remediation" (Doc. 6) is GRANTED, and this action is STAYED for ninety days to afford the defendant an opportunity to remedy any deficiencies in the subject property. The defendant shall keep the plaintiffs advised of the remedial efforts. Upon expiration of ninety days, the parties shall file a status report advising the Court whether issues remain that require a lift of the stay for further proceedings.

ORDERED in Tampa, Florida, on _____April 13th_____, 2003.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc: U.S. Magistrate Judge
    Courtroom Deputy



F I L E   C O P Y

Date Printed: 07/18/2003

Notice sent to:

     ___  Todd W. Shulby, Esq.
           Whitelock & Associates, P.A.
           300 S.E. Thirteenth St.
           Ft. Lauderdale, FL  33316

           8:03-cv-01095   rm

     ___  Lee William Atkinson, Esq.
           Tew, Barnes & Atkinson, L.L.P.
           Prestige Professional Park
           2655 McCormick Dr.
           Clearwater, FL  33759-5124

           8:03-cv-01095   rm

     ___  Richard C. Millian, Esq.
           Tew, Barnes & Atkinson, L.L.P.
           Prestige Professional Park
           2655 McCormick Dr.
           Clearwater, FL  33759-5124

           8:03-cv-01095   rm