UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ACCESS 4 ALL, INC., a Florida Not-For-Profit
Corporation, and NELSON M. STERN,
Individually,

                    Plaintiffs,

    -against-

ULSTER HEIGHTS PROPERTIES, INC.,
a New York Corporation,

                    Defendant.
------------------------------------------------------------------X

Docket No.: 1:07-cv-2923
(LBS)(FM)

Judge Leonard B. Sand
Magistrate Judge Frank Maas

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING REMEDIATION

August 4, 2008

Patricia E. Habas, Esq. (PEH 8353)
ROGERS, McCARRON & HABAS, P.C.
Attorneys for Defendant
Ulster Heights Properties, Inc.
Prel Plaza, Suite 7
60 Dutch Hill Road
Orangeburg, NY 10962
(845) 359-5400

## Table of Authorities

*Access 4 All, Inc. v. G&T Consulting Company, LLC,*
2008 WL 851918 (S.D.N.Y. 2008)..................................................................3

*Access for the Disabled v. Clearwater Professional Center, LLC,*
Case No. 8:03-cv-350-T-23MAP (M.D. Fla. 2003)..........................................4

*Access for the Disabled, Inc. v. Now Investments, Inc.,*
Case No. 8:02-cv-2337-T-26MSS (M.D. Fla. 2003).........................................4

*Bausch & Lomb Incorporated v. Alcon Laboratories, Inc.,* 914 F.Supp. 951 (1996)...............5

*City of New York v. Pierce,* 609 F.Supp. 798 (1985)..................................................5

*Doran v. Del Taco, Inc.,* SA CV 03-1223-GLT(C.D. Cal. 2005)....................................3

*Landis v. North America Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165 (1936)......................5

*Macort v. Checkers Drive-In Restaurants, Inc.,*
Case No. 8:03-cv-01328-JSM-EAJ (M.D. Fla. 2003).......................................4

*Novartis Corporation v. Dr. Reddy's Laboratories, Ltd.,*
2004 WL 2368007 (S.D.N.Y. 2004)................................................................5

*Roberts v. Royal Atlantic Corporation,* 445 F.Supp.2d 239 (E.D.N.Y. 2006)......................2

*Soler v. G&U, Inc.,* 86 F.R.D. 524 (S.D.N.Y. 1980)...................................................5

## Statement of Facts

The initial complaint was filed on or about April 12, 2007, against Aba and Jerry Heiman (the "Heimans"), whom plaintiffs improperly identified as the owners of Prel Plaza, the property at issue in this case. On or about May 5, 2007, the Heinmans filed their answer, denying ownership of Prel Plaza. Rather than properly discontinuing its claims against the Heimans, plaintiffs merely amended their complaint to add Ulster Heights Properties, Inc. ("Ulster Heights") as a defendant. The Amended Complaint was filed with the Court on or about May 14, 2007, and on or about May 22, 2007, the Heimans submitted their Amended Answer, again denying ownership of the premises.

On or about June 28, 2007, plaintiffs submitted a Motion to Dismiss its claims against the Heimans in the case. The Heimans responded on or about July 5, 2007, seeking the same relief, which was granted in an Order on or about July 23, 2007.

Defendant Ulster Heights did not become aware of the claims until recently, after a default judgment had been rendered by this Court. The original shareholder of Ulster Heights has been deceased for many years and the papers were never received by the corporation. With the consent of plaintiffs counsel, the default was vacated, and Ulster Heights time to reply was extended to August 1, 2008. During that time Ulster Heights had the opportunity to investigate the areas where plaintiff has claimed violations and retained the services of an expert professional engineer to determine what remediation, if any, is possible and readily achievable.

1

## Argument

Prel Plaza was constructed in approximately 1968, and since that time there have been no significant alterations or renovations to the building. Prel Plaza is only subject to the "readily achievable" standards for existing facilities under the Americans With Disabilities Act.

Under the Americans With Disabilities Act of 1990, owners of occupied places of public accommodation already in existence prior to January 26, 1993 need only remove architectural and structural barriers if the removal is readily achievable. Roberts v. Royal Atlantic Corporation, 445 F.Supp.2d 239, 247 (E.D.N.Y. 2006), citing 42 U.S.C. § 12182 (b)(2)(A)(iv) (1990). "Readily achievable" within the meaning of the ADA is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Roberts, 445 F.Supp at 248 citing 42 U.S.C. § 1281 (9) (1990). Additionally under the Act, any alterations to places of public accommodation after January 26, 1992 must conform with Title III's access requirements. An "alteration" is defined as "a change to a place of public accommodation... that affects or could affect the usability of the building or facility or any part thereof." Roberts, 445 F.Supp at 247. Such alterations not falling within the purview of Title III include normal maintenance and changes to the mechanical and electrical systems. Id.

Ulster Heights respectfully submits that a stay of the instant proceedings for a period of ninety (90) days to perform remediation work without the fear of additional legal fees accruing is within the court's discretion and completely appropriate under the circumstances.

A history of Fuller, Fuller & Associates, LLP's representation of "Access 4 All, Inc." in over five hundred alleged discrimination cases, commenced without prior notice to unknowing owners and lessees of businesses that purport to fall within the broad category of "places of public accommodation" has been likened to "legalized blackmail". This Court has previously

noted the excessive number of actions commenced by both Nelson M. Stern and Access 4 All, Inc. Access 4 All v. G&T Consulting Inc. 2008 WL 851918(SDNY 2008)

These claims have frequently been the subject of criticism of federal courts across the country. In Doran v. Del Taco, Inc. in the U.S. District Court for Central District of California, for the Southern Division the court explain the abusive litigation practices arising from ADA litigation:

> The ability to profit from ADA litigation has given rise to "a cottage industry." Rodriguez v. Investco, LLC., 305 F. Supp. 2d 1278, 1280-82 (M.D. Fla. 2004). The scheme is simple: An unscrupulous law firm sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through "conciliation and voluntary compliance," Id. at 1281, a lawsuit is filed, requesting damage awards that could put many of the targeted establishments out of business. Faced with costly litigation and a potentially drastic judgment against them, most businesses quickly settle. Molski v. Mandarin Touch Restaurant, 347 F. Supp.2d at 863[Referred to as the Molski I court].
>
> As the Molski I court observed, the result of this scheme is that "the means for enforcing the ADA (attorneys' fees) have become more important and desirable than the end (accessibility for disabled individuals)." Id. (quoting Brother v. Tiger Partner, LLC., 331 F.Supp.2d 1368, 1375 (M.D. Fla 2004). Serial plaintiffs serve as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." Id. (quoting Rodriguez, 305 F. Supp. 2d at 1285). It is a "type of shotgun litigation [that] undermines both the spirit and purpose of the ADA." Id. quoting Brother, 331 F. Supp.2d 1375).
>
> Frustration with the perceived manipulation of the ADA to produce attorneys' fees led to Judge Rafeedie of the Central District of California in a second Molski opinion to condemn counsel for abusive and predatory litigation practices, declare their plaintiff a vexatious litigant, find counsel presented multiple excessive claims "bordering on extortionate shysterism" and urge a State Bar investigation and counsels' suspension or disbarment. Molski v. Mandarin Touch Rest., 359 F. Supp. 2d 924, 926-27, 934, 937 (C.D. Cal. 2005)(hereinafter Molski II). The court noted

> the damage from such fee abuse is not limited to the businesses and insurers that are victims of the scheme:
>
> The integrity of the bar is called into question by the well-publicized accounts of lawyers employing unethical tactics in the pursuit of their own financial gain. The legitimacy of the courts is also injured because the public may view the courts as complicit in allowing these shakedown schemes to continue. Most importantly, this type of litigation creates a backlash against disabled persons who rely on the ADA as a means of achieving equal access.
>
> Doran v. Del Taco, Inc., Case No. SA CV 03-1223-GLT(C.D. Cal. 2005).

Access 4 All, Inc., by its attorneys, Fuller, Fuller & Associates, LLP, have brought close to 500 cases based similar facts. Nelson Stern has brought 79 actions in the federal district courts of New York, New Jersey Connecticut and California. It is clear based on the sheer number of cases that Nelson Stern does not have an intention of returning to each and every location where he was purportedly discriminated against and rather, this is attempt to extort legal fees.

In the backdrop of these predatory practices, it would be easy to penalize a defendant attempting to ensure that disabled individuals do not experience difficulty in accessing the building. If the true spirit of the ADA is preserved, the court would encourage a defendant's voluntary compliance. Indeed, a motion to stay under identical circumstances was granted by the U.S. District Court for the Middle District of Florida in Macort v. Checkers Drive-In Restaurants, Inc., Case No. 8:03-cv-01328-JSM-EAJ (M.D. Fla. 2003). A copy of the Macort order is annexed to Defendant's motion to stay. A stay was also granted in Access for the Disabled, Inc. v. Now Investments, Inc., Case No. 8:02-cv-2337-T-26MSS (M.D. Fla. 2003) and Access for the Disabled v. Clearwater Professional Center, LLC, Case No. 8:03-cv-350-T-23MAP (M.D. Fla. 2003). Copies of said decisions are annexed to Defendant's Motion to Stay.

This Court has discretion to grant the instant stay. This Court previously granted a stay in City of New York v. Pierce, 609 F. Supp. 798 (1985), wherein the U.S. Department of Housing and Urban Development was reconsidering its approval of a grant for Harborside, which had the potential to render the action moot. In its discussion of the standard, this Court held: "A district court may stay an action by virtue of its "inherent power over [its] own process" Id. at 799, citing Soler v. G&U Inc., 86 F.R.D. 524, 526 (S.D.N.Y. 1980). It is well established that a court may grant a stay upon consideration of the interests of the parties. Landis v. North America Co., 299 U.S. 248, 254, 57 S.Ct. 163, 165 (1936).

Without a stay of these proceedings, Plaintiff's counsel would continue to threaten defendant with a potential award of its attorneys' fees at an excessive rate. There is no prejudice to a brief stay in this case, which may result in the plaintiff's purported goal, the removal of barriers to plaintiffs' access. If plaintiffs' intent in bringing this suit (to make the premises accessible) is to be believed, a brief stay of these proceedings is appropriate. This Court has previously stayed actions where the stay may result in making the action moot. Novartis Corporation v. Dr. Reddy's Laboratories, Ltd., 2004 WL 2368007, *3-4 (S.D.N.Y. 2004)(Court granted 30 month stay pending completion of FDA reevaluation as the "FDA's decision may moot the case before this Court"). The Western District of New York granted a stay in Bausch & Lomb Incorporated v. Alcon Laboratories, Inc., 914 F. Supp. 951 (1996), where that the U.S. Patent and Trademark Office initiated a reexamination proceeding may make the pending infringement action moot.

A stay would also promote judicial economy as the instant proceeding may no longer be necessary based upon the defendant's voluntary compliance. This Court has previously found that a stay early in the case will "conserve judicial and party resources by avoiding potentially

needless and expensive discovery". Novartis, 2004 WL 2368007, *3 (S.D.N.Y. 2004). There is no harm to the plaintiffs, as their ultimate goal may be achieved without unnecessary protracted litigation.

WHEREFORE, it is respectfully submitted that a ninety day stay of the instant proceedings be granted to permit Defendant, Ulster Heights Properties, Inc. investigate and complete remediation work at the subject premises.

Dated: August 4, 2008

/S/
Patricia E. Habas, Esq. (PEM 8353)
ROGERS, McCARRON & HABAS, P.C.
Attorneys for Defendant
Ulster Heights Properties, Inc.
Prel Plaza, Suite 7
60 Dutch Hill Road
Orangeburg, NY 10962
(845) 359-5400

To:  Nelson M. Stern, Esq. (NS8646)
NELSON M. STERN ATTORNEY AT LAW
Counsel for Plaintiff Access 4 All, Inc.
964 Third Avenue, 5th Floor
New York, NY 10155
(212) 223-8330
(212) 371-2131 – Facsimile
scooterlawyer@aol.com

Lawrence A. Fuller, Esquire
FULLER, FULLER & ASSOCIATES, P.A.
Co-Counsel for Plaintiffs
12000 Biscayne Blvd., Suite 609
North Miami, FL 33181
(305) 891-5199
(305) 893-9505 – Facsimile
lfuller@fullerfuller.com